[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff husband commenced this action for a dissolution of the parties' marriage by complaint returnable July 1, 1997. He alleges that the marriage has broken down irretrievably and seeks an equitable division of the marital assets and debts and such other relief as equity may allow. The defendant wife stated at the time of trial that she did not want the divorce and believed, with counseling and some additional help, the marriage might possibly be saved. However, she further stated that faced with the plaintiff's course of action for the divorce, she filed an answer and a cross-complaint with the same allegations and claims as the plaintiff as well as claims for alimony and restoration of her maiden name. Both parties were represented by counsel throughout the proceedings including trial.
At the hearing, the parties testified, filed financial affidavits, submitted proposed written claims for relief and introduced documentary materials into evidence. In addition, the plaintiff called one witness. The trial was held on December 17, 1998 and consumed the full day. From the evidence, the Court finds as follows.
The plaintiff husband married the defendant wife, whose birth name was Ioanna Mavrea, on September 2, 1990, at Washington Township, New Jersey. He had resided continuously in this state for at least one year before the date of the complaint, June 6, 1997. All statutory stays have expired and the court has jurisdiction. The parties have no minor children who are issue of the marriage and no other minor children were born to the wife since the date of the marriage. Neither party is a recipient of public assistance.
The plaintiff husband is 31 years of age, is a high school graduate with some college credit and appears in good health. He is currently employed as a waiter with most of his employment history involving food preparation and restaurant companies. He takes home approximately $150 per week including some tips. The defendant wife is 34 years of age, has a bachelor's degree in mathematics and is working on a joint Master's and PhD degree program at the University of Connecticut and appears in good health. She is currently employed as a teaching assistant at CT Page 993 UCONN and takes home $279.48 per week for the nine-month school year.
Both parties gave extensive evidence on the date or dates of the parties' separation. The plaintiff's testimony indicated that the breakdown of the marriage began in September 1996 when he left the marital home for a period of time. He further testified that the breakdown, without question in his mind, occurred after an incident on November 13, 1996. The defendant's testimony acknowledged that plaintiff left the marital home in September and again in November, but states the plaintiff came back in January 1997 after spending some time in Greece with her in December. The importance of the date of separation is unclear to the Court as the parties are deemed to be married until the date of judgment and the Court may look at all the circumstances of the marriage until the present date. Clearly, the evidence supports that the parties have had little or no contact since January 1997.
The parties had no substantial assets during their marriage, other than their personal belongings and furniture, but they did accumulate a large amount of debt. What they did to address this large debt structure comprised the bulk of the evidence presented to the Court. The plaintiff testified when finances were a problem, they borrowed money from his and her parents. He did not state how much was borrowed from either parent. The defendant testified that she did not know of any money borrowed from his parents but that they borrowed from her parents the sum of $11,500.00 between 1990 and 1993. She further testified that she explained to her husband that the money needed to be paid back because her parents worked hard for the money and needed it for the future. However, the defendant did not present paperwork evidencing the money as a loan or a showing of an expectation or intention of repayment. Furthermore, the plaintiff testified that the money was offered by her father without her asking for it,[1] and that her mother's expectation of repayment was nonchalant, merely stating "whenever" when talk arose concerning the money. The Court believes that monies given to a couple by their parents or relatives during the course of a marriage should be construed as gifts without clear evidence to the contrary, i.e., a note or mortgage. Gifts by definition are not expected to be repaid. Accordingly, the Court finds that the money given to the parties by the defendant's parents was a gift and makes no orders concerning those monies. The same would be true for the plaintiff's claim regarding the loan from his grandfather, even CT Page 994 though that loan could be further distinguished by the fact that this loan was given in April 1997 after the parties had separated.
Both parties agree that the student loans obtained after the defendant was accepted to UCONN were used for debts and living expenses after the educational costs were deducted. The plaintiff argues that the goods purchased with the proceeds of the loan are in the possession of the defendant and therefore, she should be responsible for the repayment of the loan. The defendant is asking that the parties share the responsibility of the repayment as the parties shared the benefit of the proceeds of the student loans. While it is clear that the items currently in the possession of the defendant have some value, it does not necessarily follow that she should be responsible for the entire debt. The possession of the goods should not offset the fact that the parties used the money jointly during the time of their marriage, having jointly agreed upon that course of action, either directly or implicitly, and therefore should be jointly responsible for the repayment. Any other finding would allow the plaintiff to have enjoyed the benefits of the money without accountability.
The parties have made additional claims concerning the debts of the parties. They are the lease for the apartment at the Pavilions, the telephone bill, the MBNA Visa account, the lease for the Jeep, the medical bill for South Jersey Hospital and several store accounts. The Court will take a short time to address each of these claims. In regards to the Avalon Pavilions debt, the Court will indicate that once a party signs a legal document such as a lease, the party assumes the responsibility and liability of that signature, regardless of the rationale of the party. In spite of plaintiff's testimony that he signed the lease to help the defendant retain the apartment, this would not relieve him of his legal obligations proscribed by the document. These obligations would include recoupment for noncompliance of the lease terms, to wit, failure to pay the rental amount. The Court also notes that the lease for the Jeep was signed only by the plaintiff and was used solely by the plaintiff. The Court finds the defendant credible when she testified that she had no previous discussion with the plaintiff concerning the leasing of the vehicle and that she was told by the plaintiff, when she first saw the vehicle, it would be paid by the business. Clearly, it would be inequitable to make the defendant liable for this debt since she had no previous knowledge of the lease, the CT Page 995 parties split shortly after the acquisition and she enjoyed no use of the vehicle.
Likewise, the bill due to South Jersey Hospital was for a medical procedure preformed on the plaintiff in September 1998. The Court takes judicial notice of the return date for this matter precedes the effective date of the requirement of the automatic orders. The purpose for the change in the statute, inter alia, was to stop the excessive litigation on the issue of parties canceling health insurance without notice. However, prior to that effective date, it was left to the respective party to protect his or her rights by obtaining a court order precluding the opposing party from canceling the insurance. The defendant stated that the plaintiff's coverage terminated at the end of the August 1997 as it had done for every year prior to that since it was dependent upon her status at UCONN. She had no direct contact with the plaintiff for several months and assumed he was taking his mail from the box for which he had a key. It was not established whether the plan as provided by the University is required to notify parties of impending termination, but the plaintiff was under no order to do so. Hence, the plaintiff was under no obligation to maintain the defendant's health insurance and the defendant made no attempts to inquire about or protect his COBRA rights.
Lastly, the court will consider remaining debts. The plaintiff testified as to several accounts that appeared on his financial affidavit which he characterized as joint debts. These included Northeast Utilities, Eddie Bauer, Homeplace, Pepboys, and J.C. Penney. He offered no additional evidence of the debts and did not disclose when or where the debts were incurred. The defendant denied that these accounts were joint liabilities with the exception of the Northeast Utilities bill. She acknowledged that the plaintiff has paid that bill consistently throughout the marriage. Furthermore, she claims that the plaintiff should be responsible for the telephone bill since he had paid for that bill as well during the marriage, although she acknowledged the bulk of the bill was calls made by her to Greece during the later part of 1996. As to the other accounts, she testified that she had no information of those accounts, but she did have her own Eddie Bauer account. Additionally, the defendant claimed the amount of the MBNA visa account. A review of the paperwork provided by the defendant (defendant's exhibit 4) shows that the resulting balance was for items charged prior to November 1996 because the defendant has made payments on the account which, CT Page 996 more or less, equals the items charged by the defendant since that time.
The Court has considered all of the evidence and its findings in the light of the criteria in General Statutes Sections 46-62,46b-81 and 46b-82, and orders:
A decree dissolving the marriage shall enter on the ground of its irretrievable breakdown.
 The plaintiff shall be responsible for one half of the debt owed to the Student Loan Corporation equal to the portion used by the parties outside of education expenses, i.e., $15,293.00. Additionally, the plaintiff shall be responsible for repayment of the proportionate share of any interest that applies to said loans. The plaintiff shall pay to the defendant on a monthly basis his share of the payment in a timely fashion so that she may make full payment. The defendant shall notify the plaintiff at least sixty days prior to the start of the payment schedule of his payment amount and the date the payment is due to her.
 The plaintiff shall pay one half of the debt owed to Avalon Pavilions.
 The plaintiff shall be responsible for the debt to South Jersey Hospital.
 The plaintiff shall return any and all boxes of letters and books belonging to the defendant as well as the negatives from their wedding pictures.
 The defendant shall return the Technics Stereo System, the yearbook, CD's, record albums and books currently in her possession.
 The defendant shall pay the telephone bill and the MBNA visa account. The court notes that the payment of these two items constitutes the remainder of the property settlement between the parties. It gives credit to the plaintiff for his payment of the joint liabilities, to wit: Cox cable and Northeast Utilities and his interest in the Minolta camera, the washer and dryer, the video camera and the 1990 Pontiac.
 The defendant shall be restored to her maiden name of CT Page 997 Ioanna Mavrea.
Moore, J.